## MONTGOMERY v. JOHNSTON.

September 10, 1836.

*Rule to show cause why the judgment should not be set aside.*

An instrument of writing stipulating for the payment of money at a future period, and where the consideration is also executory, is not within the 2d section of the act of the 28th of March 1835, entitling the plaintiff to a judgment for want of an *affidavit* of defence.  STROUD, J. dissenting.

Thus where A, in writing, contracts to pay B a sum of money for certain stock to be delivered to A at a *future period*, the contract in writing is not such an "instrument for the payment of money" within contemplation of the act of the 28th of March 1835, as to entitle the plaintiff, in a suit by B against A, to judgment thereon for want of an *affidavit* of defence.

IN this case the plaintiff filed, in due time, under the act of 1835, a copy of the instrument on which the action was alleged to be brought, and there being no *affidavit* of defence, took a judgment under the 2d section of the said act.

The defendant obtained a rule to show cause why the judgment should not be set aside.

The instrument, a copy of which was filed, was in the following words:

"Philadelphia, February 18th, 1836.  Bought of Mr Robert Montgomery one hundred and fifty shares of stock of the Mechanics Bank of the city and county of Philadelphia, at the rate of 68 dollars per share, deliverable in thirty days from to-morrow, the 19th inst., with interest.   Due March 20th, 1836.

"150 shares Mechanics Bank at $68,  -     -     - $10,200 00
"Interest, -     -     -     -     -     -     -     -       51 00

$10,251 00
"Correct.   ROBERT JOHNSTON."

*Cadwalader* (*Holcomb* was with him) contended that this was not

such an instrument of writing as the act of the 28th of March 1835 contemplated, the undertaking to pay money being conditional and contingent, and not direct. That upon the mere expiration of the thirty days, the undertaking of the defendant did not necessarily take effect.

*Law, contra,* argued that a liberal and fair construction of the act comprehended such an instrument; and that it was not unreasonable to put the defendant to a denial of the delivery of the stock, or a tender of it, if such were his defence.

PETTIT, *President.*—I am of opinion that this rule should be made absolute. I have always considered that the *instrument of writing* filed should exhibit, on its face, the fact that the liability of the defendant to pay money to the plaintiff was complete at the commencement of the suit. In the present instance, the undertaking is upon a contingency, which it nowhere appears has happened. This distinction, I think, clearly illustrates the true construction of the act of assembly, and furnishes as safe a rule as can be adopted for the disposition of questions of this description. Where it is manifest, not merely that the contract is executory, but that the consideration itself is executory, the instrument cannot be helped by mere lapse of time. Though the instrument of writing may have relation to the *payment of money,* yet where the paper does not of itself, without extraneous evidence, import the direct and absolute undertaking to pay, it is not within the purview of the act. In Bayard *v.* Gillasspy, *ante p.* 256, the paper filed furnished, on its face, the proof of the happening of the only contingency, on which the liability of the defendant was made to depend, to wit, the written award of the referee, authorized by the defendant. The case of bills of exchange and promissory notes proves nothing in opposition to this view. They are negotiable instruments in constant use, and the giving of notice to parties secondarily liable, of the failure of the parties primarily liable, to comply with their engagements, is so much in the ordinary course of business, that the legislature may well have put drawers of bills and indorsers of notes to *affidavits of defence* upon this general presumption of notice. But it is sufficient that such instruments are within the law by the force of its express terms.

The obligation here, however, is not, in the common acceptation

[Montgomery v. Johnston.]

of the term, a promise to pay money. It is an undertaking of the defendant to comply with his part of a mutual contract, requiring action on the part of the plaintiff before the defendant's liability can attach. If the legislature had thought it proper to include such instruments in the act, it is not improbable that they would have required an *affidavit* of the plaintiff that the preliminary step necessary on his part to fix the responsibility of the defendant had been taken. The defendant might then, with some reason, have been called upon to swear or affirm to a defence, and state its nature and character, or submit to a judgment.

STROUD, J.—This application rests entirely upon the assumption that the instrument of writing, of which a copy has been filed, is *not an instrument for the payment of money*; and the opinions of both my brothers accord, in this respect, with the defendant's. This circumstance has necessarily induced me to distrust the tendency of my own reasoning to a different conclusion; and yet, after applying to the subject the severest scrutiny of which I am capable, I find my original impressions confirmed instead of being weakened.

If I understand the instrument, and it is admitted on all hands to be perfectly simple in its character, it was framed for *one* purpose *only*, namely, as an acknowledgement in writing by the defendant that he had become bound to the plaintiff to pay him the sum of money mentioned in it, on the consideration which it expresses. This appears to me to be as accurate a description as can be devised of an *instrument of writing for the payment of money.* No other sensible meaning has been suggested, and the argument on this point does not require, and will scarcely admit of, illustration or enforcement.

It was conceded on the argument, and the position is too plain to admit of a doubt, that if the consideration mentioned had been the *previous* purchase and transfer of the bank stock, no room for controversy would have been left. But how does the fact that the consideration was *not executed* but *executory*, affect the *character* of the instrument as to *the point of inquiry?* It is the obligation of the defendant to pay the money to the plaintiff, which attaches to the instrument creating this obligation the quality of an instrument *for the payment of money.* If this obligation was a constituent of the instrument at its inception, its characteristic of an *instrument for the*

[Montgomery v. Johnston.]

*payment of money* was immediately impressed upon it, and must adhere to it still.

It is said, that in the event of the trial of the cause, the plaintiff would be under the necessity of proving the conversion of this *executory* into an *executed* consideration, anterior to the institution of his action. This is undoubtedly so; but the question still recurs, without the slightest abatement of its strength or relevancy, in what manner does this requisition divest the instrument of its *original* quality of an *instrument for the payment of money?* The reply which has been given to this question is, that *proof* of the *fulfilment* of the *executory* stipulation no where appears upon the record. This is a circumstance, however, altogether immaterial to the inquiry, and was manifestly regarded as of no importance by the legislature. This is abundantly evident from parts of the same act, about which all agree, and upon which hundreds of judgments have been entered, without an intimation from any quarter of their irregularity. Thus it is rudimental learning, that a demand must be first made on the parties primarily liable on *a promissory note or bill of exchange*, and notice of their failure to pay promptly communicated to the indorser of the one or the drawer of the other, in order to secure their responsibility. The necessity of proving these facts before a jury was, without doubt, within the knowledge of the legislature, and yet a summary judgment is expressly sanctioned in such cases *upon the single requisition on the part of the plaintiff of filing, within proper time, a copy of the note or bill.* The act also embraces, in terms, *scire facias on mechanics' liens*, and exacts no other preliminary to judgment, except the filing of *the claim.* Yet how many distinct facts must be proved before a jury to give validity to these liens. Further, by the late supplement to the law, the provision for summary judgment has been extended to "actions brought on contracts for *the loan or advance of money*, whether the same be reduced to writing or not;" and to entitle the plaintiff to judgment in such cases, nothing else is demanded but his own "*affidavit, setting forth the terms of the said loan or advance, with the date thereof.*" The terms of a loan may naturally be expected to partake of every variety which the wants or caprices of mankind may require or suggest; and yet the act has not made the proof of a compliance on the one part, or a failure to comply on the other, in regard to any of these, essential to the judgment. In short, the nature and quantity of the evidence requisite to sustain the plaintiff on a trial, form no criterion, and are therefore

[Montgomery v. Johnston.]

wholly foreign to the inquiry as to the character of the instruments comprehended under the *description of an instrument for the payment of money. The law exacts no proof whatever of the plaintiff.* A copy of the instrument is to be filed; but this is proof of nothing. Even its fidelity as a transcript is not to be verified by oath or affirmation. Of itself, indeed, the exhibition of the *original*, had that been required, could, in no proper sense, be called *proof* in the cause. The judgment is, *in terms*, a *judgment by default* : the default of the *defendant* in not denying by an *affidavit* those facts which on a trial the plaintiff would be bound to prove. In defect of this denial, *they are to be taken as confessed.* This is the *theory* of the statute; and it is this, *in practice*, which imparts to it its chief excellence, if not its entire value.

For these reasons I think the judgment is regular, and should not be set aside.

JONES, J.—When the legislature undertake to denote the characteristic or peculiar qualities of the subject matter of an enactment, we ought to assume that they have sufficiently defined or described it; and on that ground to exclude every matter which does not, in its entire substance, correspond with the description. Instruments of writing form a very large and multifarious class of civil acts. Some of them have specific denominations and others are innominate. The specific difference of the class of instruments intended by the clause under consideration is denoted by the words "for the payment of money." The meaning of the legislature is obvious from the form of the expression. They begin with an enumeration, by name, of the most usual securities for money—"bills, notes, bonds;" and because some securities of the same species have no specific denomination, and others which have, may have been omitted, they proceed to describe them by the words "or other instruments of writing for the payment of money;" that is, they named such of the class in view as have names and were recollected at the moment, and described the rest. The construction which I oppose proceeds upon the idea that the legislature did not mean by this first clause of the section to denominate or describe the class of instruments, but to provide merely that a plaintiff, who has evidence of a pecuniary demand in any instrument of writing, executed for any purpose, may proceed under this section. At least, the construction amounts to this, for it leaves to us no ground upon which any just discrimina-

[Montgomery v. Johnston.]

tion of instruments (however diversified their objects) can be made, provided they contain a stipulation, by either party, for the payment of money.   A ground rent deed is within the act according to this construction ; yet this is as truly an instrument for the conveyance of land as for the payment of money.   In fact, the very name we give to it shows that when we mean to be understood, we call it neither.   This construction makes the expression tautologous ; and besides, if the legislature had intended a provision of such extensive operation, it would have been more natural to make the discrimination by the words, " in all actions instituted, &c., upon any *covenant or promise* in writing, for the payment of money."   For these reasons I prefer the construction which restricts the act to instruments for the payment of money, and for nothing else or more.   It is said that this view of the act destroys its value.   If the observation were well founded, it furnishes no reason why we should add to the intention of the legislature, fairly deducible from the language of the act. But I cannot agree to the observation.   It only confines it within the limits in which its operation is likely to be just.   The class of instruments still within it is very numerous, and they are the cases in which we most frequently find there is really no defence.

I regret that there should be a difference of opinion upon this important point ; but, seeing what I suppose to be reasons for dissent, I felt it my duty to express them.

Hereafter I shall consider this view of the act mistaken, and shall adopt, as I am bound to do, the conclusions of the majority of the court upon this point.   I concur, however, with the president of the court in setting aside the judgment in this case.

Rule absolute.

1.—2 R